# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BARRY J. BADEAUX** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **No. 18-6606** |
| | * | |
| **BP EXPLORATION &** | * | |
| **PRODUCTION, INC., ET AL.** | * | **SECTION "L" (5)** |

## ORDER & REASONS

Before the Court is a motion to dismiss filed by Defendants BP Exploration & Production, Inc.; BP America Production Company (collectively "BP"); and CB&I Group, Inc. ("CB&I"). R. Doc. 19. Plaintiff Barry J. Badeaux has filed an opposition, R. Doc. 20, and Defendants have filed a reply, R. Doc. 26. Having considered the pleadings, the parties' arguments, and the law, the Court rules as follows.

### I. BACKGROUND

Plaintiff Barry J. Badeaux filed the instant petition in 24th Judicial District Court for the Parish of Jefferson, State of Louisiana on July 10, 2018, alleging Defendants were unjustly enriched when they used his idea for containing the flow of oil released in the aftermath of the Deepwater Horizon oil spill in April 2010. R. Doc. 1-2 at ¶ 5. Defendants removed the petition to this Court on July 10, 2018. R. Doc. 1.

Plaintiff alleges that, "in an effort to address the initial problem of how to stop the flow of oil into the Gulf of Mexico, the entities responsible for the catastrophic oil spill as well as local, state and federal officials sought ways to cap the well." R. Doc. 1-2 at ¶ 6. According to Plaintiff, BP offered cash payments for "useful ideas." *Id.* In response to that offer, Plaintiff purports to have "devised a plan to prevent the oil spilling from the uncapped well from entering

1

surrounding marshes" by using a series of "barges and specialized oil skimmers that would effectively collect the oil before it could enter the marshes and reach the coastline." *Id.* at ¶ 7. As a part of his design, Plaintiff alleges he drew plans for and built a prototype of a "PVC pipe in a 'bar bell type' configuration" at his own expense. *Id.* at ¶ 7–8. Plaintiff contends he presented his drawn plans to Chris Roberts, a member of the Parish Council in Jefferson Parish Louisiana. *Id.* at ¶ 9. According to Plaintiff, Mr. Roberts represented he would submit Plaintiff's idea to the U.S. Coast Guard for approval on Plaintiff's behalf. *Id.* at ¶ 10.

On June 18, 2010, Deano Bonano, director of emergency preparedness for Jefferson Parish, "discussed the plan to use 60 barges to make a 7,000-foot barrier to block and channel the oil at the entrance to Barataria Bay." *Id.* at ¶ 13. "A short time later, Kevin Davis, the then President of St. Tammany Parish, indicated that St. Tammany Parish would also implement the barge plan." *Id.* at ¶ 12. The Coast Guard subsequently approved this plan, and barges were placed at the entrance to Barataria Bay and at the mouth of the Rigolets at Lake Borgne to prevent oil from entering the marshland. *Id.* at ¶ 12, 14. Plaintiff alleges it was his plan the Coast Guard approved. *Id.* at 13.

Plaintiff contends that once he noticed the plan being implemented was actually his, he "made several telephone calls to various BP representatives informing them of the fact that the barge/oil skimmer plan was his and that it could not be used without his permission or compensation." *Id.* at ¶ 15. He also alleges he sent correspondence to BP in which he "reserved all rights to his invention and made demand for payment of any use of his device." *Id.* at ¶ 16. Plaintiff alleges BP did not respond. *Id.*

Plaintiff asserts he did not give permission for use of his designs and was not compensated by Defendants for his time and efforts, including the construction of the prototype

2

barge. *Id.* at ¶ 8, 14, 19. Specifically, Plaintiff claims that, although it was his design the Coast Guard ultimately approved, BP instead contracted with Defendant CB&I to implement Plaintiff's plan, through which CB&I received millions of dollars in payment. *Id.* at ¶ 20. Plaintiff further alleges BP benefitted from the use of his designs by reducing its exposure to increased damages from further harm to the Louisiana coastal wetlands for which it was responsible. *Id.* at ¶ 21–22. Based on this factual background, Plaintiff brings claims for unjust enrichment against BP and CB&I. *Id.* at ¶ 23.

## II.     PRESENT MOTION

Defendants jointly move to dismiss Plaintiff's petition for failure to state a claim. R. Doc. 19. They argue Plaintiff's claim should be dismissed because his petition contains only conclusory allegations and fails to plausibly allege several necessary elements of unjust enrichment R. Doc. 19-2 at 2, 9.

First, Defendants assert Plaintiff's petition does not contain sufficient factual allegations to state a plausible claim that his idea was used by either St. Tammany or Jefferson Parish. *Id.* at 3. Second, Defendants argue that, even if Plaintiff's invention or design was used to clean up the oil spill, Plaintiff was neither impoverished nor were Defendants unjustly enriched by its use, as Plaintiff voluntarily gave his designs to Louisiana Parish officials at his own risk. *Id.* at 5. Third, Defendants argue that, because the contract between them constituted a valid juridical act, Plaintiff has not plausibly alleged that any purported enrichment or impoverishment was without "cause." *Id.* at 5, 7. Finally, Defendants argue the availability of other remedies at law preclude Plaintiff's claim. *Id.* at 7–9.

In opposition, Plaintiff argues his petition adequately alleges facts for each of the five elements of unjust enrichment under Louisiana law. R. Doc. 20 at 2. Plaintiff alleges CB&I was

3

enriched by the multi-million-dollar contract it obtained using his invention and designs. *Id.* at 4. With respect to Defendant BP, Plaintiff alleges his invention prevented the "destruction of marshlands and coastline as well as marine life including shrimp, crabs and small fish," thereby enriching BP through savings in damages that were mitigated by use of his plan. *Id.* at 3. Plaintiff argues he has been impoverished because he has not received any compensation for the use of his work. *Id.* at 4. Plaintiff further argues that his allegation that he presented his design to government officials who in turn gained approval for its use by the Coast Guard establishes the connection between his impoverishment and Defendants' enrichment, *id.* at 3, and that the use of his design without permission and compensation satisfies the absence of justification or cause requirement, *id.* at 4–5. Finally, Plaintiff argues there are no other remedies at law available to him, as he does not hold a patent on his design and does not have a contractual relationship with either Defendant. *Id.* at 6–7. Accordingly, Plaintiff argues that his allegations, taken as true, satisfy the elements for an unjust enrichment claims. *Id.* at 7.

In reply, Defendants maintain Plaintiff's petition lacks factual allegations from which the Court can infer his invention was used in the oil spill response efforts. R. Doc. 26 at 2. Defendants contend Plaintiff's allegations are legal conclusions with little to no factual support. *Id.* at 2–3. Thus, Defendants reiterate their assertion that Plaintiff's claim fails to satisfy the elements of unjust enrichment as a matter of law. *Id.* at 4–5.

### III. LAW & ANALYSIS

#### a. Motion to Dismiss Standard – 12(b)(6)

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears

4

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2012) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The district court must construe facts in the light most favorable to the nonmoving party and must accept as true all factual allegations contained in the complaint. *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018). Additionally, courts should "make all inferences in a manner favorable to the plaintiff, 'but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim.'" *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010)). Nevertheless, a court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

      **b.**    **Unjust Enrichment Standard**

Louisiana Civil Code article 2298 states, in pertinent part:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context

> to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.

Accordingly, in Louisiana, to state a claim for unjust enrichment, a plaintiff must allege: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to the plaintiff. *Barker v. Maclay Props. Co.*, 94-1529 (La. 1/17/95), 648 So. 2d 888, 897.

    **c.**    **Analysis**

Defendants first argue Plaintiff has not plausibly pleaded that the Louisiana government used his invention and, therefore, Plaintiff has failed to sufficiently plead Defendants were enriched by his idea. R. Doc. 19-2 at 3. In support of their argument, Defendants point to *Boateng v. BP Expl. & Prod., Inc.*, Civ. Action No. 11-1383, 2018 WL 3869499 (E.D. La. Aug. 15, 2018), among several other similar cases.[1]

In *Boateng*, this Court dismissed the plaintiff's claim that the defendants were unjustly enriched when they allegedly used technology invented by the plaintiff to cap the Macondo Well during the 2010 oil spill in the Gulf of Mexico. *Id.* at *1. In that case, the plaintiff alleged his plan "called for the removal of the bolts so the cap-head could be removed and replaced with a

---

[1] *See, e.g., Richards v. British Petroleum*, No. 11-cv-1096, 869 F. Supp. 2d 730 (E.D. La. Apr. 23, 2012), *aff'd sub nom. Richards v. BP Exploration & Prod., Inc.*, 533 F. App'x 378 (5th Cir. 2013); *Cutler v. BP*, No. 12-2019, 2012 WL 4753418, at *4 (E.D. La. Oct. 4, 2012); *McIntyre v. BP Exploration & Prod., Inc.*, No. 13-149, 2015 WL 999092 (D. Alaska Mar. 5, 2015), *aff'd*, 697 F. App'x 546 (9th Cir. 2017); *Laing v. BP Exploration & Prod., Inc.*, No. 13-1041, 2014 WL 272846, at *5 (M.D. Fla. Jan. 23, 2014); *Throckmorton v. BP Am.*, No. 11-00159, slip op. at 1–2 (E.D. Ky. Apr. 13, 2012), *aff'd*, No. 12-5434, slip op. at 4 (6th Cir. Nov. 13, 2012); *Holland v. BP Am., Inc.*, No. 11-0580, 2012 WL 761980, at *6 (E.D. Cal. Mar. 7, 2012); *Erikson v. BP Exploration & Prod. Co.*, No. 13-464, slip op. at 4 (W.D. Okla. Nov. 18, 2013); *Walker v. BP Oil Pipeline Co.*, No. 12-61083, slip op. at 2–3 (S.D. Fla. July 9, 2012).

valve. That valve then could be either shut off to stop the leak or connected to a new pipe to pump the oil to the surface," and attached to his opposition to the defendants' motion to dismiss "images depicting the proposal he allegedly submitted to [the defendants], as well as images of the capping stack actually used by [the defendants] to stop the discharge." *Id.* at *3. Based on these allegations, the Court found the plaintiff's complaint, including the additional descriptions and images included in his opposition, failed to establish that he conferred an actual benefit upon the defendants, as "[t]he notion that [the defendants were] enriched by [the plaintiff's] proposal is facially implausible." *Id.* at 3–4.

In this case, Plaintiff offers only a vague description of the idea he submitted to government officials in the wake of the 2010 oil spill. The petition alleges only that Plaintiff's plan involved a series of "barges and specialized oil skimmers that would effectively collect the oil before it could enter the marshes and reach the coastline," using a "PVC pipe in a 'bar bell type' configuration." R. Doc. 1-2 at ¶ 7–8. Plaintiff does not offer any description of the device ultimately used to mitigate the damages caused by the spill; rather, Plaintiff alleges only that a representative of Jefferson Parish, "discussed the plan to use 60 barges to make a 7,000-foot barrier to block and channel the oil at the entrance to Barataria Bay" and that the plan was, in fact, his. *Id.* at ¶ 13. These *ipse dixit* allegations fail to rise above the speculative level.

Moreover, Plaintiff does not allege or explain at least three key connections: (1) the relationship between the Defendants, the Coast Guard, and Louisiana government officials; (2) how Defendants obtained his invention or designs from the Coast Guard or the Louisiana government; and (3) how his invention or design became the subject of the alleged multi-million-dollar contract between Defendants. Even if the Plaintiff's alleged facts are taken as true, the Court would have to make several inferences regarding the connections between the Plaintiff,

7

Defendants, and third parties. The Court finds such inferences are unreasonable. *See Iqbal*, 556 U.S. at 678.

Because Plaintiff has failed to allege facts demonstrating above the speculative level that the Louisiana government used his idea—let alone how his idea was communicated to Defendants—Plaintiff's allegations fail to establish that he conferred an actual benefit upon Defendants. *See Firefighters' Ret. Sys.*, 894 F.3d at 669. As a result, the Court will grant Defendants' motion to dismiss, as Plaintiff has failed to establish a necessary element of his unjust enrichment claim.

## IV. CONCLUSION

Because Plaintiff's petition fails to state a claim for relief that is plausible on its face,

**IT IS ORDERED** that the motion to dismiss filed by Defendants BP Exploration & Production, Inc.; BP America Production Company; and CB&I Group, Inc. ("CB&I"), R. Doc. 19, be and hereby is **GRANTED**.

New Orleans, Louisiana on this 30th day of November, 2018.

_____
Eldon E. Fallon
U.S. District Court Judge